[907 NYS2d 563]

County of Nassau, Plaintiff, v Samuel M. Levine, Defendant.

District Court of Nassau County, First District, July 12, 2010

**APPEARANCES OF COUNSEL**

*Samuel M. Levine*, Long Beach, defendant pro se. *John Ciampoli*, County Attorney (*Andrew R. Scott* of counsel), for plaintiff.

## OPINION OF THE COURT

SUSAN T. KLUEWER, J.

Movant's application for an order dismissing two notices of liability in the interests of justice is denied.

Movant has received in the mail two notices, one advising that, as owner of a vehicle bearing New York State license plate number JDGSAM2, he is liable to pay a fine of $50 because, on October 19, 2009 at 9:31 A.M., the driver of that vehicle did not stop at a red light. By the other, he is advised that he is liable to pay a fine of $50 because the driver of the same vehicle failed to stop at a red light on October 29, 2009 at 9:36 A.M. Each notice has color photographs of movant's car at an intersection. Each advises movant that "the recorded images and video of your violation will be submitted as evidence in the Traffic and Parking Violations Agency proceeding"; that "[y]ou may view your images and video online"; that payment of the fine can be made by mail "in the enclosed envelope," evidently addressed to "Nassau County, Red Light Camera Division, P.O. Box 742503, Cincinnati, Ohio"; that payment of the fine—and a $4 convenience fee—can be made "online"; and that payment of the fine can be made in person "at the Nassau County Traffic and Parking Violations Agency, 16 Cooper Street, Hempstead, New York." Each also advises that there are "two ways to contest this violation," i.e., by signing an enclosed coupon and mailing it to the Nassau County Traffic and Parking Violations Agency (TPVA) before the "due date" specified on the notice, whereupon "you will be notified of the date, time and location of your hearing"; or,

> "if the basis of your claim is that your vehicle/plate was stolen or the driver received a ticket from a police officer, you may complete an affidavit of Non-Responsibility and attach a certified copy of the police report or a copy of the ticket with the coupon. Your affidavit and supporting documentation will be reviewed and will result in either dismissal of this violation or scheduling of an administrative hearing."

Movant requested in each case what is described in the "coupon" he returned as an "administrative adjudication hearing" to contest his liability. In each instance, movant received a letter from the "Red Light Camera Division" of the "Nassau County, TPVA" advising that each matter had been scheduled for a hearing. Those hearings are currently scheduled for July

14, 2010 at "Nassau County Traffic and Parking Violations Agency."

Defendant now makes application before me, as president of the Board of Judges of the District Court (*see* UDCA 2406), for "dismissal" of the notices of liability. He moves pursuant to CPL 170.40. In support, he asserts that, on both October 19, 2009 and October 29, 2009, his wife was on her way to an "important health-related appointment to deal with her serious cancer problem"; that, on both occasions, she started making a left turn from northbound Long Beach Road to westbound Daly Boulevard in Oceanside; that the "newly installed (and defective) Traffic Control Monitoring System (the Red Light Camera), produced pictures showing our Hyundai grey car going through the intersection"; that the amber light was lit for only 4.1 seconds which, he claims, is an "illegally short period"; and that the amber light was "improperly set by the installing company and their technicians." He also asserts he will not be able to cross-examine a "live person who installed and tested the Red Light Camera System"; that his due process rights are thus violated; that what he characterizes as a "required highway sign . . . warning about 'Photo Enforced Red Light' was not present"; and that no written certificate by a technician "as required by the new laws" was sent to him after he submitted the request for a hearing. Movant next urges that there is "no law" authorizing the county executive to establish a "District Court Clerk's Office for the issuance of Notices of Liability or receipt of mail-in-fines payable to Nassau County to the out-of-state [city] of Phoenix Arizona [*sic*]"; that Nassau County has violated sections 2406 and 2408 of the "Nassau County District Court Act," apparently because, according to him "[n]o action has been taken by the Board of Judges of the District Court"; and that, according to him, the judicial hearing officers who will conduct the hearings on his liability are appointed by the county executive in violation of article 22 of the Judiciary Law and 22 NYCRR part 122. Finally, movant addresses the criteria governing motions made pursuant to CPL 170.40 by asserting that "guilt is questionable"; that the operator and the owner of the vehicle "are outstanding citizens"; that the "minor traffic fine is not needed"; that the "safety and welfare of the community are not involved in this case"; that there is "no impact of dismissal on the public confidence"; that the "respondent is a retired judge"; and that a fine "is not warranted."

Nassau County, by memorandum of law submitted in opposition, asserts, among other things, that there is no "authority"

for movant's claim that the amber light was on for a period of time that is illegally short; that the "Manual on Uniform Traffic Control Devices" published by the Federal Highway Administration provides that the duration of a "yellow change interval" is to be determined by "using engineering practices"; that the guidelines provide that a "yellow change interval" should have a duration of between three and six seconds; that longer intervals should be used for approaches with higher speeds; and that New York has adopted these standards. Nassau County further asserts that, since hearsay is permissible in an administrative proceeding, movant's due process claims are without merit; that movant is merely speculating that he will not be provided with the requisite technician's certificate at the time of the hearing; and that there is no prohibition against delegating to an entity outside New York some of the tasks associated with the red light camera program. Insofar as movant claims that it has violated sections 2406 and 2408 of the "Nassau County District Court Act," Nassau County points out that that Act was repealed in 1963, but it proceeds to make the erroneous argument that there is no corresponding section in the Uniform District Court Act (*but see* Uniform Dist Ct Act, art XXIV, § 2401 *et seq.*; *see also* Nassau County Charter § 2408), and it thus concludes that movant's claims in this regard are "without merit." Nassau County then asserts that movant's remaining claims, including those concerning the appointment of judicial hearing officers, have been resolved against movant in a matter entitled *Levine v Suozzi* (2010 NY Slip Op 31008[U] [Sup Ct, Nassau County, Apr. 12, 2010, Lally, J.]), litigation by which movant sought, among other things, a declaration that the county executive lacked authority to appoint judicial hearing officers to determine matters pending before the TPVA, and wherein the court dismissed movant's complaint pursuant to CPLR 3211 (a) (5) and (7), ruling, among other things, that the delegation of authority to the TPVA includes the authority to appoint judicial hearing officers, and that movant's claims that the county executive's "designation of [judicial hearing officers] at the TPVA violated the State's statutory scheme fails as a matter of law." (2010 NY Slip Op 31008[U], *7.) Finally, referring to a nationwide study of fatal crashes at traffic signals, Nassau County notes that passing a red traffic light is a public safety hazard, and that there is nothing "minor" about the violation. It urges that granting an application premised, in part, on movant's invocation of his status as a retired judge

would adversely affect the public's confidence in a system that is not supposed to favor the politically connected, and that, in any event, dismissal at this stage "would be contrary to the policy stated on its web [s]ite [and on the notice of liability]" that a violator cannot under the experimental program at issue plead to a lesser offense or pay a fine of less than $50.

Movant in reply makes note of the legislation establishing the Board of Judges of the District Court, and, citing the Court of Appeals' recognition of its existence (see *Matter of Dolce v Nassau County Traffic & Parking Violations Agency*, 7 NY3d 492 [2006]), he repeats his claims that it is illegal for the county executive to appoint judicial hearing officers. He further complains, in effect, that there is a violation of the Separation of Powers Clauses of the State and Federal Constitutions because the county executive appoints and thus controls the judicial hearing officers, appoints and thus controls the executive director of TPVA, and thus indirectly appoints and also controls the prosecutors. He additionally complains that, because of what he terms "ex parte" communications between TPVA's executive director—also a retired judge—and the county attorney, he cannot get a fair hearing under the current system. Finally, he asserts that *Levine v Suozzi* was wrongly decided and that, in any event, it is not "res judicata" as to the claims made in this case.

In March 2009, the state legislature enacted Vehicle and Traffic Law § 1111-b to authorize Nassau County to adopt a local law establishing a "demonstration program imposing monetary liability on the owner of a vehicle for failure of the operator thereof" to stop at a red light as required by Vehicle and Traffic Law § 1111 (d) (Vehicle and Traffic Law § 1111-b [a] [1], as added by L 2009, ch 19, § 3). The legislation thus authorizes installation of what are commonly referred to as "red light cameras" at no more than 50 intersections within the county, and it designates the requirements the County must abide by in imposing liability on owners of vehicles that are driven through red lights. These include: that the owner is liable for the penalty imposed if the vehicle was used or operated with the owner's express or implied permission; that no penalty may be imposed on the owner where the operator "has been convicted of the underlying violation of" Vehicle and Traffic Law § 1111 (d) (Vehicle and Traffic Law § 1111-b [b]); that a certificate "sworn to or affirmed" by a technician employed by Nassau County, based on inspection of a "traffic-control signal photo violation-monitoring system, shall be prima facie evidence of the facts

contained therein" (*id.* § 1111-b [d]); that the photographs, videotapes or other recorded images "shall be available for inspection in any proceeding to adjudicate the liability" for the violation (*id.*); that the owner is liable for "monetary penalties" set forth in the local law enacted in conjunction with the state legislation, which penalties shall not exceed $50 for each offense, although an additional penalty of $25 on account of failure to timely respond may also be provided for in the local law (*id.* § 1111-b [e]); that imposition of liability "shall not be deemed a conviction as an operator and shall not be made part of the operating record of the person upon whom such liability is imposed" (*id.* § 1111-b [f]); that a notice of liability containing statutorily specified information—which notice shall be prepared by Nassau County "or by any other entity authorized by such county to prepare and mail such notification"—shall be sent by first class mail to each person alleged to be the owner of the vehicle (*id.* § 1111-b [g] [1], [4]); and that, in addition to lack of consent to operation, or conviction for violation of Vehicle and Traffic Law § 1111 (d), malfunction of the "traffic-control indications" device is a defense to liability under the program (*id.* § 1111-b [o]). The legislature also at that time amended Vehicle and Traffic Law § 1809 to exempt those on whom liability is imposed pursuant to this program from assessment of surcharges and crime victim fees that are imposed on persons convicted of violating provisions of the Vehicle and Traffic Law. Finally, it dictated that the "[a]djudication of the liability imposed upon owners by this section shall be by the court having jurisdiction over traffic infractions." (Vehicle and Traffic Law § 1111-b [h].) Pursuant to this legislation, Nassau County enacted Local Law No. 12-2009 of County of Nassau in June 2009. In addition to adopting the requirements noted above, the local law provides for a fine of $50 for each violation, and for an additional penalty of $25 for failure to respond to the notice of liability within 42 days of its mailing (Local Law 12-2009, § 4 [a]). It further provides that adjudication of liability "shall be by the Nassau County Traffic and Parking Violations Agency, as a branch of the District Court of Nassau County." (Local Law 12-2009, § 6.)

Nassau County's claim that, in effect, article XXIV of the Uniform District Court Act does not exist, and that, therefore, there is no Board of Judges of the District Court, is simply wrong (*cf. Matter of Dolce v Nassau County Traffic & Parking Violations Agency, supra*). Indeed, the entirety of article XXIV is

set forth in McKinney's Consolidated Laws of New York, is designated therein as "supplemental" to the Uniform District Court Act, and is enabled by appropriate legislation adopted by Nassau County (*see* Nassau County Charter § 2401 *et seq.*). Nassau County's implicit argument that no judge of the District Court has jurisdiction over any of the claims movant makes in this matter is thus also wrong (*cf. id.*). To the extent, however, that I have jurisdiction (*but see* CPLR 3001) to determine movant's claim that Nassau County violated UDCA 2408 when it enacted the legislation establishing the "red light camera" demonstration program, that claim is also ill-founded.

Among the statutorily specified but nonetheless limited functions of the Board of Judges of the District Court is the establishment, except in certain cases not pertinent here, of procedures governing the payment of fines by persons accused of violating any provision of any law, ordinance, rule or regulation relating to vehicular or pedestrian traffic, without appearing in person (*see* UDCA 2408; *see also* Nassau County Charter § 2408). It is thus its function to prescribe, within the legislatively specified minimum and maximum, the fine to be paid, to prescribe the form of the "summons" to be used, to prescribe the manner in which the plea of guilty shall be made, and to prescribe the manner in which the money shall be paid where a person accused of violating rules, regulations and ordinances governing pedestrian and vehicular traffic can, and elects to, plead guilty without appearing in person (*id.*). In conformity with that function, and in contemplation of the implementation of the demonstration program, on June 12, 2009, TPVA personnel made inquiry as to whether Board of Judges approval, either of the notice of liability, or of the amount of the fine to be paid pursuant to the demonstration program, was required. In accordance with the rules established by the Board of Judges, I caused public notice to be posted advising that this issue, among others, would be on the agenda of a public meeting to be conducted on August 18, 2009. At that public meeting, the Board of Judges voted to answer the TPVA inquiry in the negative (*see* minutes, Aug. 18, 2009 meeting of Nassau County Bd of Judges of Dist Ct). It did so because UDCA 2408 contemplates that the Board of Judges set procedures only in instances where persons who are charged by "summons"—i.e., a simplified traffic information issued by a police officer in conjunction with an appearance ticket (*see* UDCA 2408 [4]; *see also* CPL art 150; Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book

11A, CPL 150.10)—elect to plead guilty without appearing in person; because TPVA is a "hybrid" agency that has both adjudicatory and prosecutorial functions, the latter of which is now under the oversight of the county executive, the former of which remains with the District Court (*see Matter of Dolce v Nassau County Traffic & Parking Violations Agency*, 7 NY3d at 498); because there is no range of fines, but instead one $50 penalty that is uniformly imposed; and because the notice of liability is not issued by a police officer and is not an accusatory instrument (*see* minutes, Aug. 18, 2009 meeting of Nassau County Bd of Judges of Dist Ct). As for movant's claim that he cannot receive a fair hearing because of what he calls "ex parte" communications between TPVA's executive director and the county attorney, it is similarly misguided. While the current executive director was once a judge, he no longer serves in that capacity and he will not determine movant's liability for the $50 penalty movant here seeks to avoid (*see* General Municipal Law § 374 [b]). Moreover, TPVA's executive director answers to the county executive and is paid by the County (*id.*; *see also* General Municipal Law § 374 [c]). He is thus, in my view, entitled, if not obligated, to consult with the attorney who represents him in his current, official capacity (*see* Nassau County Charter art XI). As for movant's challenge to what he asserts is the improper appointment of judicial hearing officers to TPVA by the county executive, he in effect seeks a declaration that the current system for appointing them is illegal. Apart from the fact that there is no statutory authority to support his contention that judicial hearing officers are in fact appointed by the county executive (*cf.* General Municipal Law § 374; *see* CPL 350.20; Vehicle and Traffic Law § 1690), apart from the fact that the Court of Appeals has noted that "judicial hearing officers, who preside over TPVA matters, continue to be appointed by the Nassau County Administrative Judge" (*see Matter of Dolce v Nassau County Traffic & Parking Violations Agency*, 7 NY3d at 498-499), and apart from the fact that it appears that movant is collaterally estopped from raising this particular claim (*see Levine v Suozzi, supra*; *see also Ryan v New York Tel. Co.*, 62 NY2d 494 [1984]), I am without jurisdiction to issue a declaration (*cf.* CPLR 3001; *see also Dilbert's Quality Supermarkets v Chassen*, 32 Misc 2d 670 [Sup Ct, Nassau County 1961, Farley, J.]).

Turning to movant's more focused claims, I am aware of no legal requirement, and movant cites none, that motorists be warned that a particular intersection is watched by a "red light

camera." I am also unaware of any legal requirement, and movant cites none, that he be supplied—before the hearing on his liability commences—with the certificate "sworn to or affirmed" by a technician employed by Nassau County, which, by statute, can serve as prima facie evidence "of the facts contained therein." And such claims as that the yellow light lasted for an illegally short period of time, or that the light otherwise malfunctioned, are recognized defenses more properly raised at the hearing on the merits of Nassau County's claim (*see* Vehicle and Traffic Law § 1111-b [*o*]). As for movant's claim that his due process rights are violated because he will not be able to cross-examine a live witness, and assuming that claim to be correct, inasmuch as he faces neither criminal conviction nor conviction for any provision of the Vehicle and Traffic Law, his assertion is without merit (*cf. Matter of A.J. & Taylor Rest. v New York State Liq. Auth.*, 214 AD2d 727 [2d Dept 1995]; *Crawford v Washington*, 541 US 36 [2004]). And to the extent that, by this and other claims, movant purports to challenge the statutory scheme governing "red light cameras" as unconstitutional, his application is procedurally defective as he has failed to give notice of it to the attorney general (*see* CPLR 1012 [b] [1]).

Movant's arguments thus provide no basis for dismissal at this stage of the proceedings. Indeed, turning to the discrete procedural context in which he couches the entirety of his many-faceted application (*see* CPL 170.40), movant is advised that the extraordinary relief of dismissal in the interests of justice is available in criminal cases commenced by the filing of an accusatory instrument (*see* CPL 170.30 [1] [g]). Since a notice of liability is not an accusatory instrument (*see* CPL 100.10), the ultimate relief movant seeks is simply not available here.

I have considered movant's remaining contentions and find them to be without merit.